OPINION OF THE COURT
Jose Bamos-Lopez, J.
Plaintiff, a stock brokerage firm, commenced this action against defendant to recover on a debit balance in defendant’s account maintained with plaintiff.
On November 1, 1978, defendant placed an order with plaintiff to purchase 10 General Motors January call options at the opening market price. The opening market quote was 3. Plaintiff purchased 10 calls for a total price of $3,109.01. The call options were never sold or exercised and expired in January, 1979 resulting in a loss of $3,109.01 to defendant’s account.
*404 Defendant failed to make payment, and plaintiff brought suit for this debit balance. Defendant, in turn, commenced a third-party action against plaintiff’s sales representative.
Defendant contends, inter alia, that plaintiff is barred from its claim because it violated margin requirements pursuant to Regulation T of the Federal Reserve Board.
Regulation T (12 CFR 220.4 [c] [2]) provides in pertinent part: “In case a customer purchases a security *** and does not make full cash payment for the security within 7 days after the date on which the security is so purchased, the creditor shall *** promptly cancel or otherwise liquidate the transaction or the unsettled portion thereof.”
Defendant alleges that plaintiff failed to liquidate defendant’s position within the required time when defendant failed to make payment and therefore is barred from recovery for violating Regulation T.
. Plaintiff argues that Regulation X (12 CFR 224 et seq.) places an equal duty upon the customer to make payment on initial margin and the failure of the customer to meet margin requirements removes any implied cause of action in favor of the customer against the broker for noncompliance with Regulation T.
Regulation X was adopted to conform with the 1970 amendment of section 7 of the Exchange Act of 1934 (the Exchange Act) which added subdivision (f) (US Code, tit 15, § 78g, subd [f], par [1]).
Subdivision (f) of section 78g of title 15 of the United States Code provides that “[i]t is unlawful for any person to obtain, receive or enjoy the beneficial use of a loan or other extension of credit from any lender * * * for the purpose of (A) purchasing or carrying United States securities *** if, under this section or rules and regulations prescribed thereunder, the loan or other credit transaction is prohibited”.
This case presents a novel question as to whether a broker should be barred from recovering all or part of the market loss in a transaction in which the broker innocently failed to liquidate the customer’s position within the *405 time limitation prescribed in Regulation T, in light of Regulation X.
Pursuant to section 7 of the Exchange Act, the Federal Reserve Board, by its Board of Governors, promulgated Regulation T and thereafter adopted Regulation X to regulate the amount of credit allowable in the securities market.
The purpose of Regulation T is to prevent the draining of a disproportionate amount of the Nation’s credit resources into the stock market (see Newman v Pershing & Co., 412 F Supp 463; Stonehill v Security Nat. Bank, 68 FRD 24). This purpose was being frustrated by investors seeking credit, in the stock market, in circumvention of margin requirements. As a result of this, subdivision (f) and Regulation X were subsequently adopted to prevent, among other purposes, borrowers from willfully and intentionally evading the provisions of margin regulations (12 CFR 224.1). The responsibility for compliance with the margin requirements is now equally placed on the investor as well as the brokers.
To bar a broker from a cause of action in the instant case would frustrate the purpose of Regulation X. The customer may be allowed to place all market risks upon the broker.
This situation can arise when the customer speculates on securities, and the value of the securities declined within the period he must make payment. The customer’s speculation may be prompted by rumors of a merger or take over of a corporation. The value of the securities of the rumored corporation tend to rise quickly if these rumors materialize. If the rumors do not materialize and the value of the securities declined within the period the customer is required to make payment, he may wish to cancel his purchase to avoid an apparent loss. If a broker is barred from a cause of action for an innocent violation of margin regulations, the customer may be encouraged to induce, by persuasion or deception, the broker to violate margin requirements. The customer may persuade the broker not to liquidate his position by promise of payment. (See Pearlstein v Scudder & German, 429 F2d 1136, 1147-1148 [Friendly, J., dissenting].)
*406 Moreover, a broker shall not be barred from a cause of action against the customer, when it innocently extends credit beyond the prescribed time of margin regulations, and the customer knowingly fails to meet margin requirements. (See Newman v Pershing & Co., 412 F Supp 463, supra.) The court, in the Newman case, ruled that a contract between a broker and customer should not be void where the violation of Regulation T- was the result of innocent errors and the broker had no intention to violate margin regulations for its benefit.
The evidence in the instant case reflects that plaintiff’s back office mistakenly entered defendant’s transaction as a “closed-out” rather than an “open” transaction. Due to this error, plaintiff failed to close out defendant’s transaction, thereby extending credit to defendant beyond the seven days as prescribed by Regulation T.
Defendant had knowledge of his open position, and a confirmation slip and monthly statements for November to January, 1979, inclusive, showing his long position, were mailed to and received by defendant.
The evidence further reflects that defendant is an attorney and an experienced trader in securities. That immediately after the options were purchased, defendant infqrmed plaintiff that a check was in the mail. The alleged check was never received by plaintiff. Defendant ccncedes that he never made payment.
Further, defendant breached the ccntract between himself and plaintiff by failing tc make payment far the qptiens he purchased. Defendant shculd be liable fer the lass resulting frem this transactien far the time he received credit, legally allowed, pursuant to margin regulations from the broker.
Loss incurred by a broker should be limited only to the date on which the transaction in issue was required to be closed by margin regulations when the customer fails to make payment. Any loss incurred beyond this time should be assumed by the broker due to its violation of margin regulations, whether by negligence or mutual consent (Exchange Act, § 7c; US Code, tit 15, § 78g, subd [c]).
*407 However, the evidence further shows that plaintiff failed to deliver to defendant an options prospectus and option agreement for execution, in violation of the rules of the Chicago Board Options Exchange.
The options prospectus is intended to inform the prospective trader of the rules and regulations of the Options Clearing Corp. and the Exchanges, and the inherent risk in purchasing options and selling options short. The options agreement is intended to set forth the rights and obligations between the broker and customer in connection with options traded by the customer.
Though the Securities and Exchange Commission have not adopted any regulations governing options trading the rights and obligations between broker and trader, it has proposed rules and regulations which have been adopted by the Options Clearing Corp. and Exchanges, and presently are in effect.
The commission has made a special study of the options market which concludes that because of the complexities and risk of options trading, numerous regulations must be implemented to protect the public investors. (SEC Report on the Special Study of the Options Market, Feb. 15, 1979; 1979 CCH Dec. § 81, 945.)
To conform to the rules of the Exchanges and intention of the commission, a broker must strictly adhere to the rules of the Exchanges regarding disclosure regardless of whether the investor has prior knowledge of the rules.
The evidence shows that defendant, herein, began to trade options shortly prior to the transaction in issue.
Moreover, the plaintiff by failing to deliver or cause to deliver a prospectus to defendant prior to or after effecting the instant transaction violated section 5 (subd [b], par [2]) of the Exchange Act of 1933 (US Code, tit 15, § lie, subd [b], par [2]) and the contract is void pursuant to subdivision b of section 29 of the Exchange Act (US Code, tit 15, § 78cc, subd [b]).
Based on the foregoing, plaintiff’s cause of action against defendant is dismissed with prejudice, with statutory costs and disbursements.
*408 Defendant and third-party plaintiff’s cause of action against third-party defendant is likewise dismissed with prejudice for failure to prove a prima facie case.